May it please the Court, again I'm very honored to be here and honored to represent the petitioners in this case, Pavel Shvetsov and his wife, Julia. If the Court is so inclined, I'd like to reserve two minutes for rebuttal at the end of my presentation. As the Court knows, this is an immigration asylum appeal case. As the Court is also familiar, I believe, our own State Department has concluded that there's widespread persecution of Jehovah's Witnesses in Russia, which is formerly part of the Soviet Union. And that's because part of the Soviet philosophy is that any religion is a threat to the statehood, to Mother Russia. And unfortunately, Mr. Shvetsov in this case experienced that persecution firsthand. In December 2005, when he testified before the immigration judge here in San Francisco, he was 22 years old. He had been in this country for about four months, and he spoke almost no English. That's important for the credibility finding that I'll talk about in a minute. And he testified through an interpreter. Even so, in the hours-long testimony that he gave, he testified to specific persecution because of his affiliation with the Jehovah's Witnesses. He was twice beaten. His uncle had to pay a bribe to get him out of jail. And just before he escaped to come to this country on a student visa, a representative of the police force in his hometown said that he would have to denounce his faith in order to avoid any further persecution. Now, the immigration judge heard all that, but denied all relief under the asylum provisions of the Immigration and Nationality Act, under the withholding of removal provisions, as well as the Convention Against Torture. What's at issue here is whether the two bases for that decision were proper. And they were not proper, which is why this Court should reverse and remand to the BIA for further proceedings. And let me explain why. And I'm just going to highlight a few points because I think the briefing on both sides is fairly thorough, so I won't take the Court's time unnecessarily. The immigration judge did not find that anything in Mr. Shvetsov's testimony was inconsistent with the State Department report or was inherently implausible or just fantastical or that he was shifty or didn't make eye contact, not any of the normal things that suggest a problem with demeanor. The basis for the immigration judge's denial of asylum, which is affirmed almost without analysis by the BIA, were two things. One, Mr. Shvetsov failed to provide documentary formal proof of his, quote, membership in the Jehovah's Witnesses. Just a couple of questions on this. Certainly. Do Jehovah's Witnesses baptize? They do baptize, and there's a process for confirmation into the church, which is what gives someone permission. And do they issue a formal certificate or any evidence of membership once they're baptized? You know, Your Honor, that evidence is not in the record. My own research indicates that it varies by geographic region. I don't recall anything in the record that suggested that Mr. Shvetsov was actually baptized as a Jehovah's Witness. That's absolutely correct. And, in fact, he testified to that before the immigration judge, and we've cited that in the brief. And that's the point here, is that this Court and other courts, most recently the Eleventh Circuit and the Mezverishvili case, which we've cited at length in our brief, have held that on a religious persecution claim, it's not important that the person be a formal member or a priest or a cardholder or anything like that. You can be persecuted merely for associating with members of a certain faith. Are you arguing, then, imputed religious affiliation, or is it just direct religious affiliation? He just wasn't formally baptized. It's two things, Your Honor. I want to be very clear about this. These are the two reasons why the immigration judge failed in this regard. He failed to recognize the possibility of an imputed religious claim, which is what the Court has just mentioned, which means that, as in any other area, politics, social status, whatever, under the Immigration and Nationality Act, someone could be persecuted if the authorities believe they have a certain religious belief. And Mr. Shvetsov testified without contradiction that the police, when they ripped up his Bible and stormed his meetings, called him a Satanist and other things that would suggest that the police knew exactly what they were doing here, that they don't like Jehovah's Witnesses. Whether he was a member or not, it didn't matter to the police. And that's the basis for these court decisions. The other piece of it is, even putting aside the imputed part of it, someone can have a loose connection to a religion and still be persecuted because of that connection. In the Mezrishvili case, for example, it's a very similar fact here. The immigration judge seized on the fact that that person had not regularly attended. In that case, it was a Jehovah's Witness, had not regularly attended the Kingdom Hall, didn't appear to know certain tenets of the religion, couldn't produce any sort of proof in documentary form in any way that he had been a member. And the Eleventh Circuit was very clear. That person never said he was a member when he applied for asylum. He simply said he was affiliated with and engaging in certain activities, and that was the basis for the persecution. The IJ seemed to focus quite a bit on the question of proof. And Mr. Shvetsov was given repeated opportunities to try to provide some kind of documentary proof. He said he couldn't do that, but IJ asked him if he would like an opportunity, offered him a continuance. He declined to do that. At the very end of the hearing, it appears that counsel sort of circled back and said, well, what we would like to do is to get some kind of declarations of affiliation, which would be something short of, I assume, proof of membership. And at that point, the IJ said, been there, done that. And your client said no, so motion denied. What should we do with this? Okay. All of that is true, I think, in the record, except the last part. I don't think it's clear that the counsel for Mr. Shvetsov was saying that she would be able to provide anything short of a declaration of membership. The problem here is the provisions of the Real ID Act. As this Court is aware, and as the government has pointed out over and over in its brief, there is a new provision in the Real ID Act that provides that even otherwise credible testimony may have to be corroborated, but there's a limitation to that which applies in this case. Corroboration is required only if the applicant does not have the evidence and cannot reasonably obtain it. In other words, if you can't reasonably obtain the corroboration, an adverse credibility finding can't be based upon that failure. It's true that Mr. Shvetsov had an opportunity to get membership, but he explained to the immigration judge why he couldn't do that, and that evidence was not contradicted. He said two things. He said, one, the leadership has changed, which is not surprising in an underground religion. It changes locations. It changes leaders specifically to avoid persecution. And just real quickly. On the other hand, the Jehovah's Witnesses have a very, very public face because of their very, very aggressive proselytizing activities and their distribution of watchtower and so forth. And it's clear that he was engaged in some of those very, very public activities. Why couldn't he have said, well, Judge, I can't provide you with a documentary evidence of my membership because I wasn't baptized, but here's what I can get if I have a sufficient time. I'll contact some of my former associates at Kingdom Hall, and I will have them write you a letter and verify my story. It's a reasonable request, Your Honor, but Mr. Spetsov also addressed that before the immigration judge. He said that he had tried and was not successful and that if he pushed further, he felt he would jeopardize the safety of his brothers in faith. In just writing a letter? He couldn't obtain a letter? Apparently not. I wasn't there. The Court wasn't there. We can only go based on whether there was substantial evidence and whether it was fair to require him to produce something. Let me point out that this very Court in the Ara Lampalam case pointed out that this is a pre-Real Ideac case, but I think this holding still applies here. When you're talking about getting corroboration, in particular in an underground religion, from some places 3,000, 6,000, 9,000 miles away from a hostile regime, from people who might be friendly to you but are still beholden to the authorities and fearing persecution, this Court, the Ninth Circuit, said that evidence is almost never easily available, and that's exactly what is happening in this case. I see I only have a minute and a half left, so I'd like to reserve the balance of my time. Counsel, I have a question for you. Yes, sir. I'll ask Judge Bidey to give you an extra minute for rebuttal, since I'm going to take up your time now, though. Certainly. My question, I had the impression that the I.J. did make a demeanor-related finding saying that there were long pauses before answering, and if I'm right in that, how do you address that? Well, that's the other piece of this, Your Honor, and it's a very good question. The government correctly points out, and as we concede in our brief, that this Court has to defer to the immigration judge's demeanor findings if they're supported by substantial evidence. Everyone here agrees on that. The problem is that that's not simply a rubber stamp. I think the suggestion in the government's brief veered towards that those findings are nearly impenetrable, and that's simply not the case. This Court has been very clear that even under a substantial evidence standard of review, of which the demeanor finding falls under, the immigration judge has to present specific cogent reasons that are explained by the record and which actually suggest a lack of credibility. Now, in this case, unlike the many, many other cases this Court has dealt with in reviewing BIA and I.J.  not the clear contradictions or the constant evasion that marks so many of these cases. Yeah, but there were some other things as well. He was unhappy that when he asked him a question that he would look at his counsel for a response, and I.J. actually challenged him. Why are you looking over there? I'm talking to you. Why are you looking to him for the answers? Right. And asked him about it, and he actually had a colloquy. He says, well, I'm trying not to make a mistake here. We point that out in our brief. I think that supports our position, Your Honor. Mr. Shvetsov's answer to that was he doesn't want to make a mistake. Again, he's 22 years old. He's nervous. He doesn't speak English. There are apparently some issues of translation. Part of it got cut off in the transcript, as we point out in our brief. He's trying to explain to the I.J. that he's trying to be truthful and that he's nervous, and he's trying to do the best that he can. The reason it seems clear from reading the entire transcript that the reason he looked at his counsel was related to what Your Honor brought up a few minutes ago, which is that they had just been talking about this issue of getting a recess to find this proof. And here's an immigration judge saying, give me proof that you're a Jehovah's Witness. And this kid essentially saying, I don't have it. I don't know what to do in response to that question. And after the colloquy, it comes out, once he understands that the judge is not asking him to actually produce it right then and there, he says, look, I don't have it. And he explains, I tried to get it. I can't do it. The leadership has changed. I'm a Jehovah's Witness. I don't lie. Please take me at my word. Your client has a tough burden when he's not even willing to try to get somebody from Russia to back up his story, and he has the burden of proof. Well, he does have the burden of proof, but the record doesn't show that he didn't try. The issue is simply, is the evidence reasonably available? And there are many circumstances where evidence could exist in theory but not be reasonably available, and I think this is one of those circumstances. The district, the I.J., again, at the very end of the hearing, denies counsel's request for a continuance. And I took counsel's request to be slightly different from what the I.J. had previously requested. Now, is there error there in the I.J.'s refusal to grant a continuance for those purposes? We're not challenging that, Your Honor. It's not clear from the record what counsel was requesting. We think the I.J.'s determination is error for the reasons we've pointed out and that I've explained here. Just very briefly before we go, the last exchange which seemed to really upset the I.J. and get him thinking that this guy's just not credible was a further delay. The record doesn't reveal how long the delay was. But what I think is really striking here about how the I.J. went about this analysis is that when the question was asked, in that final exchange, Mr. Spetsoff immediately said that he didn't understand the question. The question was repeated and he immediately answered. Yet that somehow worked its way into the I.J.'s analysis, finding that Mr. Spetsoff was not credible. That's simply wrong. Under any standard of review, that suggests the I.J. was either not being thorough or was looking for an excuse not to believe Mr. Spetsoff. And with that, I will reserve the balance. Thank you. All right. Thank you, Mr. Steele. May it please this Court, my name is Andrew Oliveira. On behalf of the Respondent, Eric H. Holder, the Attorney General of the United States of America. To establish eligibility for asylum, an alien must demonstrate that any past persecution was or future persecution would be on account of a protected ground. In this case, it was Spetsoff's religion. The immigration judge determined that Spetsoff failed to establish that he belonged to the Jehovah Witnesses due to his testimony, which the immigration judge determined was evasive. And furthermore, his failure to corroborate the claim that he joined the Jehovah Witnesses. On appeal, the Board dismissed the evidence in the record does not compel reversal of that determination. I first want to address the adverse credibility finding. This Court has held that adverse credibility findings based on demeanor are entitled to special deference above and beyond the deference normally accorded to adverse credibility findings. As this Court stated in Jabril, it is inappropriate to substitute the immigration judge's firsthand impression of the testimony with reading a stale record that simply denotes a pause. The immigration judge is there to observe the pause and determine whether or not it's a pause of an alien being thoughtful and trying to be 100 percent correct or whether the alien is, in fact, being unresponsive and avoiding the question. The immigration judge in his decision noted numerous occasions of unresponsiveness and failure to address the questions. As the immigration judge noted, the alien was Mr. Shvetsov was smiling when he was not answering these questions. You know, he would not respond and then would say, I just want you to take my word on this. The evidence in the record when reviewing the testimony as a whole does not compel the conclusion that the immigration judge erred in making the adverse credibility finding. And I'd like to address the corroboration next. The REAL ID Act has changed this circuit's law on corroboration. If an alien is credible, if the immigration judge requests corroboration, they must provide it unless the evidence is unavailable, and the alien has the burden of demonstrating that such evidence was unavailable. Congress has further stated that the fact of credibility, once again, as Mr. Shvetsov said, while they've changed, people have changed. The same people aren't the same folks. Well, Mr. Shvetsov has the burden of demonstrating that such evidence is unavailable, and his statements of, I tried, doesn't demonstrate that it's unavailable. He has to show the steps that he took and why it's not available. And as Congress stated in 1252b4d, this Court can only reverse a request for corroboration if the evidence in the record compels the finding that such evidence was unavailable. The evidence in the record does not do so. Counsel, I want to pursue the line I pursued with Mr. Steele. The concern that I have in this case is the IJ's continuing focus on the question of membership. And I never understood Mr. Shvetsov to claim that he was formerly a member of the Jehovah's Witnesses, but he was clearly affiliated with them. And his story is, while during the time that I was affiliated with them, the police persecuted me, and I fear that I will be persecuted then because I intend to affiliate with them in the future. That is correct, Your Honor. And nowhere in the immigration judge's opinion or the transcript of the hearing indicated that he was solely limiting the corroboration requested to some sort of formal membership card or a baptismal certificate because Shvetsov used the word baptismal certificate. But I thought that the IJ repeatedly requested proof of membership. That is correct. But, again, I don't know how that gets translated, but, you know, certainly one could be asked if you're a card-carrying Jehovah's Witness. And truthfully, he has to say no, and I have no way of providing such corroboration. It doesn't matter how much time you give me. That is correct. But the issue is he didn't provide any evidence that he was affiliated with the Jehovah's Witnesses apart from his testimony, which was found to be not credible. It should be pointed out that counsel for Mr. Shvetsov before the merits hearing, three months before the merits hearing, had told him that he should provide affidavits or other such evidence to corroborate his claim, which the immigration judge notes in his decision. It would be page 53 of the administrative record. There is nothing in the record, excuse me, that says the immigration judge was limiting it solely to a formal. The following colloquy occurs on pages 130 and 131. This is Ms. Lipkin to Mr. Shvetsov. Could you get any affidavits from your fellow Jehovah's Witnesses in Russia to confirm that you were a member of that faith? Answer, I believe so, yes. Pretty direct answer. And then Ms. Lipkin to the judge. Thank you, Your Honor. Your Honor, I would again, and then it's indiscernible, the court for a continuance to allow the respondent to obtain those documents. It's denied. That is correct because earlier when the immigration judge actually proposed a continuance on by the motion of the court, Mr. Shvetsov specifically did not want a continuance. He said that he simply wanted the immigration judge to take his word. And when the immigration judge said, I don't believe you, he simply stated that he wanted to move forward. Again, I would note that ---- Well, let me parse that just a little bit. Page 102, question from the IJ. They must have papers, don't they? Answer, yes, I think they do. All right. Do you want to try it again? And that's when Mr. Shvetsov said, I don't think I can do this, so you're just going to have to take my word for it. And then Ms. Lipkin, the judge says to Ms. Lipkin, I want you to go and probe the question of documentation, which documentation is a little different from getting a corroborating letter or affidavit from somebody. Sir, do you think you can obtain documentation to corroborate that you were a Jehovah's Witness? Again, I don't know how that word documentation gets translated into Russian. But the answer is no. And that's the colloquy when he says, I don't need additional time. I can't obtain documentation. Later on he says, I can get corroboration. Well, but he didn't say that I can't get documentation but I can get an affidavit. He simply refused the opportunity to provide any corroboration. And, again, he failed to demonstrate that this evidence was unavailable because he states that papers exist. He has testified that he was engaged in a number of public activities with the Jehovah's Witnesses. And there's no he failed to demonstrate that corroboration was unavailable. He failed. He states that there was documents. But at the end he tells them that he thinks that he can obtain affidavits to confirm that he was a member of the faith. That's what he's denied the opportunity to do. So he tells the IJ, I think I can get this information. Well, again, I would point that the Shvetsov are not appealing that denial of that continuance. But, again, his testimony is inconsistent as to whether or not what he can do to get this stuff. And it simply does not the evidence in the record simply does not compel the conclusion that this evidence was unavailable. He was given numerous opportunities to provide this evidence and he did not do so. And his only explanation for it was, I tried, but it didn't happen. He doesn't explain what he did to acquire this evidence and why it's not available. Were there any continuances before? There are a number of hearings before the final merits hearing. Generally, the alien and counsel meet up, there's a reading of the document to make sure that it was properly served and that they understand the contents and the purpose of the proceedings. And there's usually pleadings taken. And then a merits hearing on the application is scheduled. The record reflects that there was a hearing in September at which point counsel for Mr. Shvetsov told him that he should acquire corroboration. Three months passed before the merits hearing and no corroboration was provided. And at that hearing, the immigration judge specifically asked the alien if he wanted a continuance. After consulting with counsel, he said he did not want one. It was on the basis of that the immigration judge denied the continuance at the end of the hearing, based on the fact that Mr. Shvetsov specifically declined an opportunity to acquire this evidence, even after the immigration judge told him that such evidence was essential to his claim. If there are no further questions, the government rests on its brief. Thank you, counsel. Mr. Steele, we'll allow you another minute. Yes, I think a minute should do it. Thank you, Your Honor. A couple of quick points. The government in its brief does not address at all this issue about the IJ's error in interpreting the statute. And that's what we talked about earlier. Can you require proof of membership or can some loose affiliation qualify? The government does not address that and counsel did not address it now, and I think that's telling. There really is no response to that. The IJ made a clear error. The Court was just questioning counsel for the government about this focus on proof. Excuse me. I was just looking at the transcript. If we thought that the IJ was a little too restrictive in these colloquies about documentation versus corroboration, what should the Court do? I think the Court has no choice but to remand. Because the entire ---- Remand for what? For an exercise of discretion to deem him credible and tell the Attorney General to issue an exercise of discretion? Yes. Or to remand to the BIA with instructions to send it back to the IJ for further proceedings? Here's what needs to happen, and I think the case law is fairly clear. If the adverse credibility finding is, as this Court has said before in the Gouy case, quote, unquote, fatally flawed, the analysis doesn't make sense, then this Court must deem the applicant credible and remand to see if that credible testimony establishes a right to asylum or to withholding of removal. In this case, we happen to have a fairly clear lack of analysis. The IJ, there's simply no dispute over and over and over again, says his claim is a religious claim. Therefore, the proof of his membership ---- Let's suppose that I disagree with you that the record compels the contrary conclusion. But let's suppose that I was deeply troubled by the fact that we seem to have had a bit of a miscommunication between counsel and Mr. Shvetsov and the IJ over the question of corroboration versus documentation of, you know, sort of the documentation of baptism, which he said he could not provide because he wasn't, in fact, baptized. Correct. Now, if I thought that there was a mistake there, you mean this is an all-or-nothing deal? We have ---- the Court has no tools at its disposal other than to either say the petition is denied or the petition is granted and we send it back to the IJ, to the Attorney General, for an exercise of discretion on the question of asylum. Here's what the case law says as I read it. If the credibility finding cannot stand, either because the IJ made an error in interpreting the statute, which clearly it did here, or because the adverse credibility finding based on the evidence is simply not supported by substantial evidence, also which is the case here, this Court has to remand and reverse that credibility finding to the BIA. Now, the BIA has options to have another hearing before the immigration judge or to deem the applicant credible and say we are exercising our discretion to either grant or not grant asylum or grant withholding of removal. So there are options. But I think the issue for this Court is once you determine that this was a flawed analysis and it cannot withstand even substantial evidence review, this Court should deem this testimony credible and remand to the BIA for the BIA to exercise its discretion. And let me ---- Mr. Steele? Yes. Mr. Steele, let me just say this. You'd have no way to know this, but I've just filed, sent for filing an opinion in another case that bears on the deemed credible rule. And, you know, if we determine that this finding can't stand, I'll suggest to the panel that we let you and the government file any supplemental letter brief about this other case, which is Soto Alarte, which it's not out yet. It's just going through our prepublication process. But it's a case where we initially, in a memorandum disposition, called for an applicant to be deemed credible, and the government filed a PFR in bank. And the panel then withdrew the memorandum disposition and has now filed a new opinion. And it alters the landscape a little bit on this issue and makes it a situation where panels can say if someone is deemed credible or they can remand for other determinations depending on the circumstances. So I think we should let you and the government comment on that if we get to that point. Yes, I'm sorry, I didn't mean to cut your honor off. I just wanted to flag that for you because you, I think, for some reason, are arguing the deemed credible rule and wouldn't be aware of this. Well, I appreciate that point. And certainly if there's an opinion coming down the pike that bears on this, I would appreciate the opportunity to further brief that. I will say, though, that no matter whether the court feels that it must deem an applicant credible if the adverse credibility finding is not supported by substantial evidence or whether there is some other way to remand for another proceeding, certainly either way a remand is appropriate in this case. And so with that, I would submit and thank the court for its time. Okay. We thank both counsel for your assistance to the court today in a very interesting, very difficult case. With that, the court stands adjourned for the week. Thank you.
judges: Canby, Gould, Bybee